**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| HURST BOILER & WELDING CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:24-CV-53 (WLS) |
| | : | |
| CCI-KCE, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

Before the Court is Defendant CCI-KCE, LLC's ("Defendant") Motion to Dismiss Plaintiff's Complaint, or Alternatively, to Transfer the Case (Doc. 4) ("Motion to Dismiss"). Therein, Defendant moves to dismiss Plaintiff Hurst Boiler & Welding Company's ("Plaintiff") Complaint, or alternatively, to transfer the above-captioned action to the United States District Court for the Northern District of Georgia. For the reasons discussed below, Defendant's Motion to Dismiss (Doc. 4) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The case will proceed to general discovery.

**I.    BACKGROUND**

  **A. Relevant Procedural Background**

On May 24, 2024, Plaintiff initiated this action by filing a Complaint (Doc. 1) against Defendant, alleging a breach of contract claim and liability under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. Defendant filed the instant Motion to Dismiss (Doc. 4) on July 11, 2024. Plaintiff filed a Response (Doc. 7) on August 1, 2024. And Defendant filed a Reply (Doc. 8) on August 15, 2024. As the Parties' respective briefs have been submitted, the Motion is ripe for ruling.

  **B. Plaintiff's Allegations**

As alleged, in March of 2022, Plaintiff, a manufacturer of steam and hot water boilers, contracted with Defendant, a freight forwarding company, for the shipment of a boiler from

1

its facility in Coolidge, Georgia, to a customer in Antlers, Oklahoma.[1] (Doc. 1 ¶¶ 6–8). A document was issued detailing the equipment to be shipped, including one 1200 HP, 150 PSI Scotch Boiler. (Doc. 1-1). At the time of shipment on March 24, 2022, the boiler was undamaged and in good condition. (Doc. 1 ¶ 10). Defendant accepted the boiler, and its driver set off for Oklahoma. (Doc. 4 at 2). While en route, the driver struck a bridge at an unspecified location in the State of Mississippi, which damaged the boiler. (Doc. 1 ¶ 11). The driver continued on to Oklahoma where, upon arrival, Plaintiff's customer refused the shipment due to the damage the boiler sustained during transport. (*Id.* ¶ 12).

The driver set out to return the boiler to Plaintiff's Coolidge, Georgia, business location. (Doc. 1 ¶ 13). On the return trip, the driver struck another bridge at another unknown location along the route causing additional damage to the boiler. (*Id.* ¶ 13). The boiler arrived at Plaintiff's Coolidge location where it underwent repairs, inspections, and testing before it was shipped to the State of Oklahoma once again. (*Id.* ¶¶ 14–15). As a result of the damage and subsequent repair, the boiler required additional inspections prior to its use. (*Id.* ¶ 16).

On April 8, 2022, Plaintiff sent a letter to Defendant requesting damages resulting from the incidents that occurred during the boiler's transport. (Doc. 1-2). Plaintiff requested payment for the cost of repairing the visible damage to the boiler, as well as unknown future costs incurred from additional testing and inspection of the boiler. (*Id.*)

## II.   LAW AND ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'"

---

[1] The facts contained herein, consistent with the standard of review for motions to dismiss, are derived from the Complaint (Doc. 1), accepted as true, and construed in the light most favorable to Plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

*Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings, the Court makes reasonable inferences in plaintiff's favor but is not required to draw plaintiff's inference. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotation marks omitted and citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). On a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555), for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

### B. Carmack Violation Claim

#### 1.   *Pre-Filing Requirements*

The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 *et seq.*, provides shippers with the statutory right to recover for actual losses or injuries to their property caused by carriers involved in the shipment. 49 U.S.C. 14706(a)(1); *see A.I.G. Uru. Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1003 (11th Cir. 2003) (citing 49 U.S.C. § 14706(a)(1)). Prior to filing suit under the Carmack Amendment, a shipper must file a notice of a claim with the carrier that satisfies the "minimum filing requirements" set forth

3

in the Surface Transportation Board (STB)[2] regulations governing claims for damage to cargo. *Siemens Power Transmission & Distrib., Inc. v. Norfolk S. Ry. Co.*, 420 F.3d 1243, 1245 (11th Cir. 2005) (holding that a shipper's compliance with the filing requirements in 49 C.F.R. § 1005.2(b) is a prerequisite to filing suit under the Carmack Amendment).

Under STB regulations, a claimant-shipper must file a "written or electronic communication" with the proper carrier "within the time limits specified in the bill of lading or contract of carriage or transportation[.]"[3] 49 C.F.R. § 1005.2(b). The written communication must "(1) [c]ontain[] facts sufficient to identify the baggage or shipment of property, (2) assert[] liability for alleged loss, damage, injury, or delay, and (3) mak[e] [a] claim for the payment of a specified or determinable amount of money[.]" 49 C.F.R. § 1005.2(b). Further, "[s]ection (e) of the Carmack Amendment provides that '[a] carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section.'" *Siemens Power Transmission*, 420 F.3d at 1243 (quoting 49 U.S.C. § 14706(e)(1)). "The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice." 49 U.S.C. § 14706(e)(1).

Here, Defendant does not dispute that Plaintiff sent timely notice of its claim for damages. (Doc. 8 at 4). Attached to Plaintiff's Complaint is a letter Plaintiff sent to Defendant on April 8, 2022, less than one month after the alleged incidents that resulted in the boiler's damage. (Doc. 1-2). The letter identifies the damaged shipment as the boiler damaged during transport from Coolidge, Georgia, to Oklahoma "on or about 3/26/22." (*Id.*) Plaintiff asserts Defendant's liability for the damage caused by its driver as well as a claim for $140,532.60 in damages associated with repairs and other costs. (Doc. 1 ¶ 17); (Doc. 1-2). Based on these allegations, the Court finds that Plaintiff has sufficiently alleged that the minimum filing requirements set forth in § 1005.2(b) have been met. (*See* Doc. 8 at 4).

---

[2] The Surface Transportation Board, formerly the Interstate Commerce Commission, is the agency designated by the Department of Transportation to regulate interstate commercial transportation.

[3] Section 1005.1 provides that the regulations govern all claims "for loss, damage, injury, or delay to property transported or accepted for transportation, in interstate or foreign commerce, by each railroad, express company, motor carrier, water carrier, and freight forwarder (hereinafter called carrier), subject to the Interstate Commerce Act." 49 C.F.R. § 1005.1.

  2. *Prima Facie Case*

  To establish a prima facie case of liability under the Carmack Amendment, the shipper must show three things: (1) the goods were delivered to the carrier in good condition; (2) the goods were damaged during transit; and (3) a specified amount of damages resulted. *Atl. Specialty Ins. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 899 (11th Cir. 2019). If Plaintiff makes these showings, the burden shifts to the defendant to demonstrate it was not negligent and the damage was caused by one of five enumerated causes. *Mo. Pac. R. R. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964). Making out a prima-facie case under the Carmack Amendment is a low burden. *Id.*

  Here, Plaintiff's Complaint alleges that (1) the boiler was in a "good and undamaged condition" at the time of shipment, (2) the boiler was damaged in transit when the driver transporting the load struck a bridge in Mississippi and another bridge at an unknown location along the return route, and (3) Plaintiff incurred $140,532.60 in damages as a result. (Doc. 1 ¶¶ 10–11, 26); (*see also* Doc. 1-2). Thus, as alleged, Plaintiff's Complaint pleads sufficient facts to make out a plausible claim under the Carmack Amendment.

  Defendant does not contest the sufficiency of these allegations. Rather, Defendant contends that Plaintiff's liability claim under § 14706 fails to state a claim because (1) Plaintiff fails to demonstrate the existence of a bill of lading "in order to bring this claim[,]" and (2) Plaintiff fails to allege that it received a response from Defendant demonstrating Defendant's denial of the claim. (Doc. 4 at 5–7). Defendant also asserts that Plaintiff's suit is time-barred because more than two years passed from the date of the notice to the date of the commencement of the instant action. (Doc. 8 at 4). For the reasons discussed below, each of Defendant's arguments fail.

  First, as Plaintiff correctly notes, there is no statutory requirement that a bill of lading exist, nor is its existence a necessary condition for a successful liability claim. Indeed, the text of the Carmack Amendment is clear that the "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier." 49 U.S.C. § 14706(a)(1). And it is the duty of the carrier, in this case Defendant, to issue a receipt or bill of lading. *Id.* ("A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part."). Plaintiff's Complaint plainly alleges that a bill of lading was issued for the

5

shipment. (Doc. 1 ¶ 9). Thus, even if the existence of a bill of lading was an essential element for stating a claim, which it is not, Plaintiff's Complaint sufficiently alleges that one was indeed issued.[4]

Additionally, even if Defendant failed to issue a bill of lading for the shipment, Plaintiff could still bring a Carmack Amendment claim. *See Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 103 (2010) (holding that, in the context of rail shipments, carriers are subject to liability for damage done to property for which the Carmack Amendment requires the carrier to issue a bill of lading, regardless of whether the carrier erroneously fails to issue such a bill); *Hubbard v. All States Relocation Servs., Inc.*, 114 F. Supp. 2d 1374, 1381 (S.D. Ga. 2000) (finding that the existence of a bill of lading is irrelevant to the applicability of the Carmack Amendment).

Second, unlike the regulatory pre-suit filing requirements under 49 C.F.R. § 1005, the denial of a written notice is relevant only to the commencement of the limitations period as prescribed in the parties' bill of lading. *See Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 699 (11th Cir. 1986) ("Among other things, the Carmack Amendment . . . allows carriers to provide in their contracts with shippers statutes of limitations for bringing civil suits of not less than two years."). Once the written notice is sent and received, carriers have an obligation to acknowledge receipt of that claim, indicate any additional information or evidence that may be required to process the claim, and create a separate file and assign thereto a successive claim file number. 49 C.F.R. § 1005.3(a)-(b). In other words, the requirement of written notice denying a claim is a regulatory requirement imposed upon Defendant, as the carrier, rather than a statutory requirement levied upon Plaintiff, as the shipper. Thus, Plaintiff is not required to allege facts showing Defendant's denial of its claim in order to sufficiently state a claim under the Carmack Amendment.

Third, the statutory language governing time limits for filing civil actions could not be clearer: the limitations period is "computed from the date the carrier gives a person written

---

[4] Defendant contends that the document referred to in the Complaint as a bill of lading, and which is attached as an exhibit to the same, (*see* Doc. 1-2), is not a bill of lading as Plaintiff purports but is instead a packing list issued by Plaintiff prior to the shipment. (Doc. 4 at 5). In effect, this is a factual argument which is inappropriate to resolve on a Rule 12(b)(6) motion. The Court makes no finding as to the classification of this document or whether a bill of lading was in fact issued.

6

notice that the carrier has disallowed any part of the claim specified in the notice[,]"not the date from which the written notice is sent. 49 U.S.C. § 14706(e)(1). "A statute of limitations bar is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in [its] complaint." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (internal quotation omitted); *see Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint.").

Here, Plaintiff sent its written notice on April 8, 2022. (*See* Doc. 1-2). The action was filed on May 24, 2024. (*See* Doc. 1). Plaintiff does not allege that Defendant denied its claim, nor is Plaintiff required to do so to state a Carmack Amendment claim. To the extent Defendant argues, relying on facts outside of the pleading and not before the Court, that Plaintiff's claim is time-barred, Defendant asserts an affirmative defense which is not apparent from the face of the Complaint. Thus, dismissal on statute-of-limitations grounds is inappropriate at this stage.[5]

In sum, the Court finds that Plaintiff's Complaint alleges sufficient facts to state a claim for relief under the Carmack Amendment. As such, Defendant's Motion to Dismiss (Doc. 4), as it pertains to Plaintiff's claim under § 14706 is **DENIED**.[6]

### C. Preemption of State Law Claims

The Carmack Amendment was enacted "to achieve uniformity in rules governing interstate shipments, including the rules governing injury or loss to property shipped." *UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1285 (11th Cir. 2014). "To accomplish the goal of uniformity, the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods." *Smith v. United Parcel Serv.*, 296 F.3d 1244 (11th Cir. 2002) (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 506 (1913)). This preemptive effect is broad and "embraces 'all losses resulting from any failure to discharge a

---

[5] Of course, Defendant may raise this statute of limitations defense at a later stage in the proceedings.

[6] Defendant also challenges the Court's subject matter jurisdiction, arguing that because Plaintiff fails to state a claim under the Carmack Amendment, there is no federal question jurisdiction, and there is no diversity of citizenship jurisdiction because the Parties are citizens of the same state. (Doc. 4 at 8). The Court need not address Defendant's argument, however, because the Court finds that Plaintiff states a plausible claim for relief under the Carmack Amendment, and thus, the Court may properly exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

carrier's duty as to any part of the agreed transportation.'" *Skanes v. FedEx*, 734 F. App'x 671, 673 (11th Cir. 2018) (quoting *Ga., Fla. & Ala. Ry. v. Blish Milling*, 241 U.S. 190, 196 (1916)). The only state law claims not preempted by the Carmack Amendment are those based on conduct that is "separate and distinct" from the conduct causing the loss of or damage to goods. *Smith*, 296 F.3d at 1249.

Here, Defendant seeks the dismissal of Plaintiff's state law breach of contract claim on the grounds that it is preempted by the Carmack Amendment. (Doc. 4 at 4–5). The claim alleges that Defendant breached the contract for shipment when it failed to "deliver the boiler to its destination in an undamaged condition," and that Plaintiff incurred damages as a result of this breach. (Doc. 1 ¶¶ 20–21). Plaintiff concedes that the breach of contract claim is based upon the same factual allegations underlying its Carmack violation claim. (Doc. 7 at 3). As such, the Court finds that the conduct giving rise to Plaintiff's state law breach of contract claim is not sufficiently "separate and distinct" from the conduct underlying its Carmack Amendment claim, and thus, the claim is preempted. Plaintiff has therefore failed to state a claim for breach of contract sufficiently separate and distinct from its Carmack Amendment claim. Accordingly, Defendant's Motion to Dismiss (Doc. 4), as it pertains to Plaintiff's breach of contract claim is **GRANTED**. Count I of the Complaint is thus **DISMISSED, with prejudice**.

**D. Venue**

Defendant moves the Court to transfer the case to the Atlanta Division of the United States District Court for the Northern District of Georgia. (Doc. 4 at 9–10). While Defendant does not specifically move for dismissal under Federal Rule of Civil Procedure 12(b)(3) for improper venue, Defendant contends that venue is improper in this district. (Doc. 4 at 9); (Doc. 8 at 7). Thus, the Court construes Defendant's motion as seeking dismissal under Rule 12(b)(3), in addition to moving to transfer under 28 U.S.C. § 1404.

1. *Carmack Amendment Venue Provisions*

The Carmack Amendment contains a special venue provision that governs actions brought under the statute. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55–56 (2013) (holding that venue is governed by the general venue provision of 28 U.S.C. § 1391 unless a more specific venue provision applies). In an action against a "delivering

8

carrier," venue is proper in the federal judicial district "through which the defendant carrier operates." 49 U.S.C. § 14706(d)(1). And in an action against a "carrier responsible for loss," venue is proper in the "judicial district in which such loss or damage is alleged to have occurred." § 14706(d)(2). Here, Plaintiff alleges, and Defendant does not dispute, that Defendant is a freight forwarding company, and as such, it is considered both the receiving and delivering carrier. (Doc. 1 ¶ 7); (Doc. 8 at 7); *see* § 14706(a)(2) ("A freight forwarder is both the receiving and delivering carrier."). Therefore, venue is proper in this Court if Defendant "operates" in this district, or the loss occurred in this district. *See id.*

Whether venue is proper under § 14706(d)(1) depends on the definition of "operates." When courts have encountered this issue, they have concluded that a carrier operates in a district when it performs some action in the district. *Compare Thompson Tractor Co. v. Daily Express Inc.,* No. 2:20-CV-02210, 2020 WL 6121158, at *4 (C.D. Ill. Oct. 16, 2020) (finding that the defendant carrier "clearly operated within th[e] judicial district when it entered th[e] district, loaded and received the generator, and then transported it through and out of th[e] district[]"), *Ponce De Leon Hosp. Corp. v. Avalon Logistics, Inc.*, 117 F. Supp. 3d 124, 130 (D.P.R. 2015) (finding venue proper under § 14706(d)(1) when a carrier transported the goods at issue through the district), *and Donaldson Tech. Grp. LLC. v. Landstar Ranger, Inc.*, 347 F. Supp. 2d 525, 527 (S.D. Ohio 2004) (finding that venue was proper under § 14706(d)(1) in a district though which the carrier passed while delivering the goods at issue), *with Starr Indem. & Liab. Co. v. Luckey Logistics, Inc.*, No. 116CV01377, 2017 WL 2466505, at *2 (C.D. Ill. June 7, 2017) (finding that an allegation that the defendant operated in the State of Illinois without alleging any specific operations in the Central District of Illinois was insufficient to establish proper venue under § 14706(d)(1)), *and Cargo-Master, Inc. v. Coast Midwest Transp., Inc.*, No. 3:97-CV-1637, 1998 WL 485685, at *4 (N.D. Tex. Aug. 7, 1998) (finding that "[a]n allegation that defendant operates within the state says nothing about its operations within this district. . . .").

Here, Plaintiff alleges that Defendant provided shipping services from Plaintiff's business location in the Middle District of Georgia to Plaintiff's customer in Oklahoma. (Doc. 1 ¶ 8); (Doc. 7 at 10). From this, it is reasonable to infer that Defendant entered this district to receive the boiler shipment and subsequently transported it through and out of the district. Thus, drawing all reasonable inferences from the allegations in Plaintiff's favor, as the

9

Court must, the Court finds that Plaintiff has alleged sufficient facts to establish proper venue in this district.[7]

### 2. *General Venue Provisions*

Defendant further contends that venue is not proper in this district under the general venue statute, 28 U.S.C. § 1391. (*See generally* Docs. 4 & 8). The statute provides three paths to proper venue in a civil action, two of which are relevant here. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003) (noting that the venue statute "contemplates some cases in which venue will be proper in two or more districts.").

First, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" 28 U.S.C. § 1391(b)(1). An entity that is a defendant, is "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" § 1391(c)(2). Venue is proper here because Defendant is subject to the Court's personal jurisdiction. As alleged, Defendant agreed to transport a boiler located in Coolidge, Georgia, and subsequently dispatched an employee to receive and load the generator in Coolidge and then transport it from Coolidge to Oklahoma. (Doc. 1 ¶¶ 8, 13). These alleged contacts demonstrate that Defendant directed its activities and purposefully availed itself of the privilege of conducting business within this judicial district, and Defendant has not contested the Court's exercise of personal jurisdiction. *See Thompson Tractor*, 2020 WL 6121158, at *3.

Second, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). A plaintiff does not have to select the venue with the most substantial nexus to the dispute, so long as she chooses a venue where a substantial part of the events giving rise to the claim occurred. *Morgan v. N. Miss. Med. Ctr., Inc.*, 403 F. Supp. 2d 1115, 1123 (S.D. Ala. 2005) (citing § 1391), *aff'd Morgan v. N. Miss. Med. Ctr., Inc.*, 225 F. App'x 828 (11th Cir. 2007) ("[T]he question is simply whether 'a substantial part' of the events transpired [in the Southern District of Alabama].").

---

[7] The Parties agree that Defendant is the delivering carrier under § 14706(d)(1), and thus, the Court need not determine whether Plaintiff has sufficiently alleged venue under the second Carmack venue provision, § 14706(d)(2).

10

Here, venue is proper under § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's Carmack Amendment violation claim, as alleged, occurred in this district, namely, that the boiler was delivered to Defendant in good condition at Plaintiff's Coolidge, Georgia location, Plaintiff received the boiler from Defendant's driver in a damaged state at the Coolidge location, and the repairs, inspections, and testing which are alleged to have culminated in Plaintiff's damages took place in Coolidge as well. (*See* Doc. 1 ¶¶ 8, 10, 13–15).

For the foregoing reasons, the Court finds that venue is proper in this district under the special venue provision of the Carmack Amendment, 49 U.S.C. § 14706(d)(1), and under the general venue statute, 28 U.S.C. § 1391(b)(1)-(2). Thus, to the extent Defendant's Motion to Dismiss (Doc. 4) could be construed as a Rule 12(b)(3) motion to dismiss for improper venue, that Motion is **DENIED**.

### E. Motion to Transfer Under § 1404

In the alternative, Defendant moves the Court under 28 U.S.C. § 1404 to transfer venue to the United States District Court for the Northern District of Georgia, the district within which it has its principal place of business. (Doc. 4 at 9–10).

The transfer of venue is governed by 28 U.S.C. § 1404(a), which states: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[8] On a motion to transfer venue under § 1404(a), the threshold inquiry is whether the case could have been brought in the alternative court. *See Talley v. City of LaGrange*, No. 4:23-CV-32, 2023 WL 4919652, at *1 (M.D. Ga. Aug. 1, 2023) (finding that, as a threshold matter, the case could have been brought in the Northern District of Georgia (citing 28 U.S.C. § 1404(a)). The Court agrees with Defendant to the extent that venue would be proper in the Northern District of Georgia because it is the judicial district in which Defendant has its principal place of business. *See* § 1391(b)(1).

---

[8] A party may request a venue change when: "(1) venue is improper, so a court must then dismiss or transfer the case under section 1406; or (2) venue is proper, but the court should apply section 1404 to transfer the case to another district on convenience grounds." *Swallow v. EAN Holdings, LLC*, No. CV 323-064, 2024 WL 4360605, at *3 (S.D. Ga. Sept. 30, 2024). As noted above, venue is proper in this district, and thus, the Court considers the convenience of transfer under § 1404(a).

Even so, the Court must also "evaluate both the convenience of the parties and various public-interest considerations." *See Atlantic Marine*, 571 U.S. at 62. The movant bears the burden to persuade the court that transfer is warranted. *Id.* (citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) and *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)). The Court considers the following factors in determining whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Of the above criteria, the three given the most weight are (1) plaintiff's choice of forum, if his selected forum is the district in which he resides; (2) inconvenience of key witnesses; and (3) the public interest. *Prather v. Raymond Constr. Co.,* 570 F. Supp. 278, 284 (N.D. Ga. 1983). On balance, the Court finds that the factors weigh against transfer of venue for two key reasons.

First, Defendant bears the burden of persuasion yet fails to argue under the relevant factors. For instance, Defendant does not assert that the Northern District is a more convenient forum for the Parties and witnesses, or that appearing in this district would present an inconvenience to potential witnesses. Likewise, Defendant does not contend that relevant documents and other evidence are more easily accessible to the Parties in the Northern District, nor does Defendant put forth any argument pertaining to the availability of process for unwilling witnesses or the relative means of the Parties. The Court will not make these arguments on Defendant's behalf. Defendant's only contention is that venue is improper in this district, and therefore, the Court should transfer the case to the district in which it has its principal place of business. (Doc. 4 at 10); (Doc. 8 at 7). As a result, the Court finds that Defendant has not met its burden of persuading the Court that transfer is appropriate here.

Second, notwithstanding the absence of any particularized argument from Defendant, the Court finds, based upon its own independent review of the factors, that transfer is not warranted here. The Court briefly addresses each of the factors in turn.

As for the first factor, the convenience of witnesses, the focus is on "non-party witnesses' willingness and ability to testify in the forum." *Moss & Assocs., LLC v. E Light Elec. Servs., Inc.*, No. 1:16-cv-702, 2016 WL 4578144, at *5 (N.D. Ga. Sept. 2, 2016). Courts also consider "the number of witnesses who may be inconvenienced by a particular forum." *PuffCuff, LLC v. Quality Plastic Prods., Inc.,* No. 1:21-CV-04663, 2022 WL 3700103, at *3 (N.D. Ga. June 2, 2022). In this case, the pool of non-party witnesses could potentially include individuals residing in various states, including Georgia, Oklahoma, and Mississippi, given that part of the alleged incidents occurred during the boiler's cross-country transport. It is more likely, however, that many of these witnesses will be Plaintiff's employees who witnessed the boiler's departure and who conducted the repairs, testing, and inspection upon its return. Thus, this factor weighs against transfer. For similar reasons, the second factor also weighs against transfer, as relevant documents and other evidence of the boiler's condition are likely located at Plaintiff's place of business.

As for the third factor, the convenience of the parties, courts seeks to determine whether transfer would be more convenient for the parties collectively as opposed to "merely shift[ing] inconvenience from one party to another." *Wetherington v. Ameripath, Inc.*, No. 1:10-CV-1108, 2010 WL 11452377, at *5 (N.D. Ga. June 25, 2010). As previously noted, Defendant is a limited liability company located in Atlanta, Georgia. (Doc. 4 at 10, 13). Plaintiff is a corporation with its principal place of business in Coolidge, Georgia, which falls within the jurisdiction of this district. (Doc. 1 ¶ 1). This district is therefore more convenient for Plaintiff, and transferring this case would only serve to shift any asserted inconvenience from Defendant to Plaintiff. Thus, this factor too weighs against transfer.

As for the fourth factor, the Court notes that this case presents the potential for more than one locus of operative facts, in other words, more than one place where the facts giving rise to the dispute occurred. For instance, the locations of the alleged collisions resulting in the damage to the boiler could be considered two distinct loci of operative fact. The Court, however, views Plaintiff's Coolidge, Georgia location, from which the boiler was dispatched, returned, and later repaired, as the more readily apparent locus of operative fact, namely because the alleged collisions transpired in an unspecified locale in Mississippi and a second, unknown location somewhere between Oklahoma and Georgia. (Doc. 1 ¶¶ 11, 13). In any

13

case, none of the events giving rise to Plaintiff's claims are alleged to have occurred in the Northern District of Georgia. For those reasons, this factor too weighs against transfer.

The fifth, sixth, and seventh factors do not tip the scales in either Party's favor. The availability of process to compel the attendance of unwilling witnesses favors transfer where "most witnesses reside outside the subpoena power of the Court[,]" but carries neutral weight in a court's analysis where "most witnesses are employees of the parties" whose attendance can be assured without the need for process. *Regenicin, Inc. v. Lonza Walkersville, Inc.,* No. 1:13-CV-3596, 2014 WL 11930591, at *6 (N.D. Ga. May 1, 2014). Similarly, the relative means of the parties carries little weight where the party moving for transfer is a business entity. *C.f. Weintraub v. Advanced Corr. Healthcare, Inc.*, 161 F. Supp. 3d 1272, 1284 (N.D. Ga. 2015) (finding the relative means of the parties particularly relevant where one party was an individual and the other was a corporation). Here, there is no apparent difference in the relative means of the Parties, as both are commercial businesses. Lastly, the seventh factor, the forum's familiarity with the governing law, is "one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Harvard v. Inch*, 408 F. Supp. 3d 1255, 1264–65 (N.D. Fla. 2019). This is especially true in the instant case as the Court is applying federal law to Plaintiff's claim under the Carmack Amendment.

Perhaps most significant to the Court's analysis is the eighth factor, the weight accorded to a plaintiff's choice of forum. As noted above, courts in this Circuit recognize a "strong presumption against disturbing plaintiffs' initial forum choice." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). This is especially true where, as here, a plaintiff files suit in its home district, and the facts of the case are related to the selected forum. *Compare Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) ("[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum.") *with Internap Corp. v. Noction Inc.*, 114 F. Supp. 3d 1336, 1342 (N.D. Ga. 2015) ("[M]ultiple district courts within the Eleventh Circuit have found, and this Court agrees, that Plaintiff's choice of forum should be entitled to less weight where the locus of operative facts is outside of the chosen forum."). Plaintiff's choice of forum weighs heavily against transfer to the Northern

District. Plaintiff, whose place of business is located within this district, elected to file this action in the Middle District, a choice which must be accorded the requisite deference. (*See* Doc. 1 ¶ 1).

As for the ninth factor, trial efficiency and the interests of justice, courts consider numerous factors, including "access to evidence, availability of witnesses, the cost of obtaining witnesses, the possibility of a jury review of relevant premises, and all other practice problems that make trial of a case easy, expeditious and inexpensive." *Griffin Cap. Co. v. Essential Props. Realty Tr., Inc.*, No. 1:18-CV-4255, 2019 WL 5586547, at *7 (N.D. Ga. Jan. 18, 2019). There is no indication that transfer to the Northern District would result in a more efficient or inexpensive resolution of this case. As discussed above, the relevant evidence and potential witnesses are located in this district. There is no connection between the underlying claims and the Northern District, other than the location of Defendant's place of business. This factor, and the interests of justice more generally, weigh against transfer.

In sum, having considered the relevant factors, Defendant's Motion to Transfer in the alternative (Doc. 4) is **DENIED**.

### III.   CONCLUSION

In sum, for the foregoing reasons, Defendant's Motion to Dismiss (Doc. 4) under Rule 12(b)(6) is **GRANTED-IN-PART** and **DENIED-IN-PART.** Plaintiff's state law breach of contract claim, at Count I, is **DISMISSED, with prejudice**. To the extent Defendant's Motion to Dismiss (Doc. 4) could be construed as a Rule 12(b)(3) motion to dismiss for improper venue, that Motion is **DENIED**. Additionally, Defendant's Motion to Transfer (Doc. 4) in the alternative is **DENIED**.

As a result, the only claim that remains in the action is Plaintiff's claim under 49 U.S.C. § 14706, at Count II. With the instant Motion to Dismiss (Doc. 4) having now been resolved, the case will proceed to general discovery. The Court will notice an Initial Discovery Conference by separate notice or order.

**SO ORDERED**, this 6th day of March 2025.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**